## STEPHEN RUG MILLS v. UNITED STATES

No. 6227.—Invoices dated Coutrai, Belgium, July 7, 1938, etc.
Entered at New York, N. Y., July 22, 1938, etc.
Entry No. 707594, etc.

(Decided October 24, 1945)

*Benjamin A. Levett* (*Benjamin A. Levett and Meyer Ohlbaum* of counsel); *Tompkins & Tompkins* (*J. Stuart Tompkins* of counsel) associate counsel; for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Samuel D. Spector*, special attorney), for the defendant.

KINCHELOE, Judge: These reappraisement appeals pertain to the dutiable value of cotton rugs exported from Belgium between March 12, 1938, and January 14, 1939, and imported by the Stephen Rug Mills. The names of the manufacturers of the rugs and the dates of their exportation are as follows:

| Reap. No. | Manufacturer | Date of exportation |
|-----------|-------------|---------------------|
| 131012–A | Manufacture de Tapis Orienta, S. A. | March 12, 1938 |
| 131011–A | Matthys Freres | April 15, 1938 |
| 131010–A | Matthys Freres | June 18, 1938 |
| 131005–A | De Jaegher & Fils S. A. | July 9, 1938 |
| 131009–A | Matthys Freres | January 14, 1939 |

The merchandise was entered by the importing company at prices which it is claimed are the prices at which such or similar articles were on the respective dates of exportation freely offered for sale to all purchasers for exportation to the United States. The appraiser advanced the value of the merchandise to what he considered was the foreign value. The plaintiff claims that at the time of exportation such or similar merchandise was not freely offered for sale in the country of exportation for home consumption. The appraised values in three of these reappraisements include a home consumption tax of 2½ per centum, as to which it is conceded by counsel for the Government that this tax does not apply to merchandise exported from Belgium (R. 4).

Originally there were 10 of these appeals before this court covering importations made by the same plaintiff herein and covering the same class of rugs as now before us. Five of these appeals (Reappraisement 130622–A, etc.) have already been tried and decided on May 3, 1943, in a decision reported as Reap. Dec. 5863, in which the trial court sustained the plaintiff's contention that there was no foreign value for the rugs as such value is defined in section 402 (c) of the Tariff Act of 1930, and found that the entered values represented the values at which such or similar merchandise was freely offered for sale to all purchasers in the ordinary course of trade for exportation to the United States. This decision was affirmed by the Third Division of this court in Reap. Dec. 5989.

Upon the trial in the present instance and on motion of counsel for the plaintiff, the record in said Reappraisements 130622–A, etc., was incorporated as part of the record herein under rule 23 of this court, without objection on the part of the Government (R. 10).

In the incorporated case the court predicated its decision upon the testimony of plaintiff's witnesses, James L. Marcus, head of plaintiff's import division, and Milton Linn, president of Weil Brothers Textiles, Inc., which testimony it did not consider was overcome or contradicted by the reports of Treasury Representative Charles Schlager introduced in evidence by the Government.

In the said incorporated case the rugs had been exported from Belgium during the period from July 1938 through October of the same year. In the present case it will be seen that one of the shipments is within the same period of time, while three shipments are earlier, and one about 3 months later.

Mr. James L. Marcus was again called by the plaintiff in the present case. He testified that the present merchandise was manufactured by some of the same factories as in the former case, and that the conditions and methods of purchase prevailing in the country of exportation were the same as in the previous case.

At the conclusion of Mr. Marcus' testimony, counsel for the defendant moved to dismiss these reappraisement appeals on the

ground that the importer failed to make out a *prima facie* case, which motion was taken under advisement by the trial judge (R. 26–27). This motion is now overruled, with an exception to the defendant.

The Government called as its witness Charles Schlager, who was a customs agent stationed abroad and who made an investigation in the Belgium market covering the rugs in question. At the conclusion of his testimony three of his reports were offered and received in evidence as defendant's exhibits 1, 2, and 3, respectively.

Defendant's exhibit 1, dated November 6, 1939, covers rugs manufactured by Matthys Freres, and is limited to rugs quality 1250, weighing between 1,300 and 1,350 grams, and states that "other qualities have not been sold by this manufacturer for consumption in Belgium." Under the heading of "Foreign Value" the report shows six sales of quality No. 1250 rugs of quantities ranging from 50 to 200, and one sale of 300 rugs, to different customers in Belgium at the price of 20 francs per square meter, net, plus tax of 2.75 per centum. The dates of the orders are given as between October 15, 1938, and July 20, 1939, but it does not appear when or if these rugs were ever delivered or that these quantities represent the usual wholesale quantities.

Defendant's exhibit 2, dated September 6, 1938, covers rugs manufactured by S. A. Orienta, and states that "This firm produces only one quality of cotton rug which weighs 1,500 grs. per sq. meter," and that the merchandise is freely offered and sold to all customers. However, under the heading "Foreign Value" it recites that "In the Belgian market only one sale appears to have been made during the current year" (1938), and this sale is one of only 24 rugs at 27 francs per square meter, net, plus tax of 2½ per centum. The said report also shows four sales for export to Holland between April 15 and July 15, 1938, in quantities of 50 to 100 rugs.

Defendant's exhibit 3, dated November 6, 1939, appears to be rather irrelevant, as it deals mainly with the cost of production, whereas an export value for rugs such as the present was shown in the previous case and again in the present case. Furthermore, in the previous case, it was shown by the witnesses Marcus and Linn that the usual wholesale quantities of the rugs in question were between 5,000 to 50,000 square meters or units.

In the previous case, Mr. Marcus also testified that "In general, the merchandise that went to France and England was superior to what were exported to the States, and was the same as that sold in Belgium." And as to the respects in which he considered the rugs sold in Belgium for the home market superior to the rugs sold for export to the United States, he testified:

\* \* \* The rugs sold in the Belgian home market in the first place, employed a far superior quality of cotton yarn, a yarn that would not attract dirt as readily

as lower qualities, and consequently it did not have to be cleaned so often and would last longer. Furthermore, in a 1,500 gram weight construction for example the rugs which were sold in Belgium had a higher percentage of cotton, and a lower percentage of jute. The jute in this type of rug forms a warp and weft or a backing, and the cotton formed the pile, therefore by employing a smaller percentage of jute and a higher percentage of cotton, the content of the pile would be much greater in the superior qualities sold in the home market, and would be superior in these two respects, the density of cotton pile per square inch, or per square meter, and also the superiority in the type of cotton employed.

The same witness also testified that the Indian cotton as used in the rugs he contracted for "is an inferior cotton" (Reappraisement 130622–A, pp. 43–44). Mr. Marcus' testimony was largely corroborated by witness Linn in the same case (R. 77–78, 94–95, 101–103, 112–115).

Defendant's witness, Treasury Representative Schlager, did testify orally in the present case that the rugs in question as sold by some manufacturers were identical with rugs sold for the home market in Belgium, but without specifying times or dates. This is practically the same contention that this witness made in all of his reports in the previous case (exhibits 1 to 5 in Reappraisement 130622–A), and his three additional reports, exhibits 1, 2, and 3 in the present case, are not more definite and specific. Furthermore, it appears from Mr. Schlager's testimony that in his opinion the weight of any given Belgian rug, such as 1,500 grams per square meter, determines its quality. This hardly accords with the testimony of plaintiff's witnesses Marcus and Linn that the Belgian rugs made for export to the United States were designedly of lower quality, of lower price, and of shorter wearing qualities than those which were made for sale and sold in smaller quantities to customers in Belgium and eleswhere.

So far as I can see, the testimony and reports of Mr. Schlager in the present case do not materially change or add to his reports in the previous case, nor do they, in my judgment, overcome the testimony of plaintiff's two witnesses Marcus and Linn in this and the incorporated cases, which covers the period of the present importations.

I therefore find as matters of fact:

1. That the merchandise in question consists of cotton rugs in part of jute exported from Belgium between March 12, 1938, and January 14, 1939, and imported into the United States.

2. That there was no foreign value, as such value is defined in section 402 (c) of the Tariff Act of 1930, for such or similar merchandise. Note *United States* v. *Kraft Phenix Cheese Corp.*, 26 C. C. P. A. 224 (C. A. D. 21), and cases therein cited.

3. That the proper basis of appraisement for said merchandise is export value, as such value is defined in section 402 (d) of said act.

4. That said merchandise was at the times of exportation thereof sold and freely offered for sale in Belgium to all purchasers in the

ordinary course of trade, in the usual wholesale quantities of 5,000 to 50,000 square meters or units, in the principal markets of Belgium for exportation to the United States, at the entered values thereof.

5. That the proper dutiable export values of said merchandise are the values set forth in finding of fact 4.

I therefore hold as matter of law that the proper basis for appraisement of the cotton rugs covered by these appeals for reappraisement is the export value, as such value is defined in section 402 (d) of the Tariff Act of 1930, and that such export values are the entered values.

Judgment will be rendered accordingly.